WILLIAM H. BRODT, Appellant, *v.* THE CITY OF YONKERS and Others, Respondents.

In the Matter of MORRIS STREET.

Second Department, December 8, 1916.

Municipal corporations — charter, city of Yonkers — street paving — right of abutting owners to petition for particular kind of pavement — failure to follow statutory requirements — service of petition upon common council — taxpayer's action.

While the charter of the city of Yonkers empowers not less than one-third of a majority of owners of property abutting upon a street which is to be repaved to petition the municipal board of contract and supply to construct a pavement of a certain character, the provisions of the statute must be complied with and the petition be made to the board of contract and supply.

Hence, a petition which was never served upon said board or its clerk, but was merely handed to the city clerk who had no relation to the board of contract and supply, and served only the common council, to which body he communicated the petition, is insufficient to require the municipal authorities to let a contract for the particular kind of pavement petitioned for, and a taxpayer has no standing to maintain an action to restrain the municipal authorities from carrying out a contract which has been duly let for a different kind of pavement.

APPEAL by the plaintiff, William H. Brodt, from an order of the Supreme Court, made at the Westchester Special Term and entered in the office of the clerk of the county of Westchester on the 17th day of July, 1916, denying his motion for an injunction *pendente lite.*

*Henry P. Molloy,* for the appellant.

*Max Cohen* [*Thomas F. Curran, Corporation Counsel,* with him on the brief], for the respondents.

JENKS, P. J.:

The plaintiff appeals from an order that refuses an injunction *pendente lite* in a taxpayer's action whereby he would enjoin the comptroller and the city treasurer of the city of Yonkers from audit or payment of " any estimates or claims made or to be made under or in any way arising or growing

out of " a certain contract made for the paving of Morris street.

On June 8, 1916, in exercise of the power conferred and pursuant to the procedure prescribed, the proper local authorities of the city made a contract for the paving of this street with sheet asphalt. (See Laws of 1908, chap. 452, art. 3, § 1, and Second Class Cities Law [Consol. Laws, chap. 53; Laws of 1909, chap. 55], § 124, as amd. by Laws of 1913, chap. 141.) On June 12th of the same year this action was commenced. The plaintiff insists that the contract is illegal and void because, in accord with the provisions of the statute, he and other property owners presented a petition designating asphalt blocks as the general kind of pavement or material to be used in making said improvement, and that thereupon the common council was compelled to authorize a contract with the lowest bidder for that kind of pavement, and so was powerless to authorize the contract actually made. If there was such a petition presented, then its action was *ultra vires.* It is plain that the common council acted as of its rights in the absence of any petition, for the ordinance for the said improvement recites that all proposals were submitted to the common council by the board of contract and supply, " together with a statement that no petitions had been received by said board as to the class or general kind of pavement to be used in making said improvement."

The board of contract and supply is a statutory body, consisting of the mayor, comptroller, commissioner of public works, corporation counsel and city engineer, charged with the duty of letting all contracts, except as otherwise prescribed, upon competition after public notice of the character of the work and of the meeting of the board whereat sealed proposals and bids would be opened. (Second Class Cities Law, §§ 120, 121.) The common council by general ordinance prescribes, approves and adopts the materials to be used in paving and repaving. Whenever it determines upon such an improvement, and the preliminary proceedings are taken, the board of contract and supply advertises for proposals for the construction of such improvement with each kind of pavement prescribed, approved and adopted. Thereafter the common council authorizes the contract. (Id. § 124, as amd. *supra.*) The control,

by a majority of not less than one-third of a majority of the abutting property owners, of the character of the pavement in improvements that contemplate a local assessment, is permitted by the statute provided such owners present a petition of designation to the *board of contract and supply.* The statute is in terms explicit and exclusive. The statutory expression "may present to the board of contract and supply" does not imply that the property owners may present such a petition to any other body or officer; it but expresses a privilege in distinction from an obligation.

It is literally true that no petition was presented to that body, and I think that it is legally true also. The contention to the contrary rests upon the fact that a third person took such a petition to the city clerk betimes, said that he had such a petition, that he did not know whether it should go to the board of contract and supply or to the common council, that he would file it with the city clerk and request him to see that it went to the proper place, and that the city clerk said that he would attend to it, and that thereupon the petition was left with the individual who was the city clerk. It is not shown, indeed the contrary appears, that the city clerk transmitted the petition or even notified the board of contract and supply of its existence. He did present it to the common council. The petition was addressed to the board of contract and supply and to the common council, and the city clerk explains, and I note this but in justice to him, that he supposed the paper was a duplicate. I cannot think that this transaction met the statutory requirement of a presentation of a petition to the board of contract and supply. That body is quite distinct from the common council even in its personnel. The city clerk is a creature of the common council, charged to attend its meetings, to keep its journal and to perform certain other duties and such as may be prescribed by law or ordinance. (Second Class Cities Law, § 32.) But none of these duties as specified, or as shown, relates in any way to such a matter as this petition. The board of contract and supply has its own statutory secretary, with certain prescribed duties. (Id. §§ 120, 121, 123.) While it is true that the statute does not prescribe in detail the procedure of presentation of such a petition it is plain

enough that presentation to that board implies that there should be communication with that board or with its secretary or other representative. Not only did the statute specifically designate the board of contract and supply as the sole recipient of such petition, but the public notice published by that board in this improvement called attention to this privilege of the property owners under the law, and named that board as the proper recipient of any petition. I think that the transaction between the said third person and the individual who was the city clerk was not a presentation of the petition to the board of contract and supply. If this agent of the said third person failed to carry out the request, his default was not tantamount to a presentation. The mere fact that he was the city clerk, who was then and thus informed that such a petition was in existence, should not charge the municipality or its board of contract and supply with even the knowledge of such petition, for, as I have stated, it does not appear that the city clerk had any official relations with this board in such matters or any official duty in the premises. (See Dillon Mun. Corp. [5th ed.] § 562, note, citing *Nichols* v. *City of Boston,* 98 Mass. 39.)

The statutory procedure under consideration involves the imposition of a local assessment, and consequently the proceedings preliminary to such an impost must be in strict conformity to the statutes. I think if the common council had proceeded upon the theory that there had been a presentation of a petition of the board of contract and supply, its action would have been open to grave question, to say the least.

I advise that the order be affirmed, but without costs.

THOMAS, CARR, STAPLETON and PUTNAM, JJ., concurred.

Order affirmed, without costs.